IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WANDA TURNER                                                                            PLAINTIFF

V.                                                   CAUSE NO.: 1:13CV001-SA-DAS

AURORA AUSTRALIS LODGE, a/k/a
AURORA AUSTRALIS LODGE, LLC;
VANGUARD HEALTH CARE SERVICES, LLC
and JOHN DOE DEFENDANTS 1-10                            DEFENDANTS

MEMORANDUM OPINION

Defendants have moved for summary judgment [61] on the remaining counts in this lawsuit.[1] For the reasons cited below, the motion is GRANTED:

*Factual and Procedural Background*

Plaintiff worked as a Certified Nursing Assistance (CNA) at Aurora Australis, a long-term care and rehabilitation facility in Columbus, Mississippi. She was also a union steward and President of her local Union for much of her ten years of employment. In that capacity, she filed grievances on behalf of her fellow CNAs, attended union meetings, and participated in Collective Bargaining Agreement (CBA) negotiations. Turner was discharged in October of 2011 for initiating a work stoppage.

Plaintiff's complaint alleges she was terminated because of her race in violation of Section 1981, in retaliation for making complaints based on race under Title VII and Section 1981, and suffered a hostile work environment because of her race. Defendants now seek summary judgment on all those claims.

---

[1] In a previous Order [43], the Court dismissed Counts 3, 5, 6, and 7 of Plaintiff's Complaint.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Discussion and Analysis*

*Race Discrimination under Section 1981*

Section 1981, known as the "equal contracts rights" provision, was enacted shortly after the Civil War and provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thus, Section 1981 "serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." Carroll v. Gen. Accident Ins. Co. of Am., 891 F.2d 1174, 1176 (5th Cir. 1990). Title VII, unlike Section 1981, is a detailed statutory scheme that "enumerates specific unlawful employment practices" and "provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers," including race-based discrimination by employers. Univ. of Tex. Sw. Med. Ctr. v. Nassar, --- U.S. ---, 133 S. Ct. 2517, 2522, 2530, 186 L. Ed. 2d 503 (June 25, 2013). "Title VII is central to the federal policy of prohibiting wrongful discrimination in the Nation's workplaces and in all sectors of economic endeavor." Id. at 2522, 186 L. Ed. 2d 503. The United States Supreme Court has recognized a "necessary overlap" between Section 1981 and Title VII, holding that "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." CBOCS West, Inc. v. Humphries, 553 U.S. 442, 455, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008) (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 48-49, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)).

Because race discrimination claims brought under Title VII and Section 1981 require the same proof to establish liability, Plaintiff's discrimination claims can be analyzed under the Title VII rubric of analysis. See Criner v. Tex.-N. M. Power Co., 470 F. App'x 364, 370 n.3 (5th Cir. 2012) (per curiam) (citing Byers v. Dall. Morning News, Inc., 209 F.3d 419, 422 n.1 (5th Cir. 2000)). Where a race discrimination claim is based on circumstantial evidence, as Plaintiff's race discrimination is here, the McDonnell Douglas burden-shifting framework is used. See McCoy v. City of Shreveport, La., 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). First, Plaintiff must establish a prima facie case of discrimination. See Septimus v. Univ. of Hous., 399 F.3d 601, 609 (5th Cir. 2005) (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citations omitted)). If Plaintiff has done so, Defendant bears the burden of setting forth a legitimate, non-discriminatory reason for its decision. See id. If Defendant does so, the presumption of discrimination disappears, and Plaintiff must demonstrate a genuine dispute of material fact as to whether Defendant's reasons are not the true reasons but are instead a pretext for discrimination. See id. (citing Okoye v. Univ. of Tex. Hous. Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001)).[2]

Plaintiff claims she was discriminated against on the basis of her race by being terminated and subjected to a racially hostile work environment. To sustain her race discrimination claim based on termination, Plaintiff must first establish a prima facie case by showing (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was replaced by someone outside the protected class, or in the case of disparate treatment, she was treated less favorably

---

[2] The Court notes that Plaintiff failed to mention the mixed-motives analysis in its summary judgment filings. See Criner, 470 F. App'x at 369 (where plaintiff fails to mention or press for a mixed motive analysis, the mixed-motive theory is waived as a district court is not required to "sift through the record for evidence supporting a party's opposition to summary judgment").

4

than similarly situated employees under nearly identical circumstances. See Lee v. Kan. City S. Ry., 574 F.3d 253, 259 (5th Cir. 2009); Okoye, 245 F.3d at 513.

Defendant contends that Plaintiff's failure to identify any similarly situated Caucasian employees who were treated more favorably than she prescribes the satisfaction of her prima facie burden. Plaintiffs relying upon the "similarly situated" approach "must show that white employees were treated differently under circumstances 'nearly identical' to [her]." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995) (citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared [1] held the same job or responsibilities, [2] shared the same supervisor or had their employment status determined by the same person, and [3] have essentially comparable violation histories." Turner v. Kan. City S. Ry. Co., 675 F.3d 887, 893 (5th Cir. 2012) (quoting Lee, 574 F.3d at 260).

Plaintiff's comparison is limited to vague contentions such as "white employees were not treated the same as black employees," "white CNAs and employees who in fact had injured, sometimes even severely, residents were not even disciplined," and "white relatives of white supervisors were giving preferential treatment in obtaining employment positions rather than her or other similarly situated black employees." As to Turner's termination in particular, Plaintiff states that on the day in question with respect to the "work stoppage," "[n]o white employees were terminated."

A plaintiff must show he has been treated differently from other similarly situated employees to make out a prima facie case for racial discrimination. Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005). The Court is of the view that Plaintiff has not made such a showing and thus has not established a prima facie case of racial discrimination under the

Title VII framework. See Mayberry, 55 F.3d at 1090 (finding that plaintiff failed to create a jury question on the issue of whether he was treated differently than identical white employees, in part, because there was no evidence of the white employees' work history); McField v. Miss. Dep't of Pub. Safety, 2013 U.S. Dist. LEXIS 82458, 2003 WL 2636616, at *3-4 (S.D. Miss. June 12, 2013) (reasoning that plaintiff failed to show that he and purported comparator, a white member of plaintiff's troop, were similarly situated where "the details provided about [the comparator were] sparse" and there was no evidence that the comparator "had a similar disciplinary history"). Plaintiff's claims of a comparator are too vague to even be evaluated and it is not the Court's duty to sift through the record to find evidence to support her opposition to summary judgment. See Okoye, 245 F.3d at 514 (plaintiff must identify the preferential treatment to another employee under "nearly identical" circumstances); Criner, 470 F. App'x at 369 (court under no obligation to sift through the record for evidence supporting a party's opposition to summary judgment). Plaintiff provided no evidence that any similarly situated Caucasian CNA was not terminated for committing or being accused of inciting a work stoppage.

Even if Plaintiff could establish a prima facie case of discrimination, Defendant has proffered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and Plaintiff has not met her burden of establishing that Defendant's reasons were pretextual. Defendant contends that Plaintiff was terminated for initiating a work stoppage. Turner acknowledges that her co-workers informed Tina Swanner that Turner told the CNAs not to work on the morning of October 7. Swanner and Holt instituted an investigation and had seventeen co-workers write statements regarding the morning of October 7. Eight of those statements indicated that Turner encouraged the CNAs not to work until more employees were

called in. Based on those interviews, as well as viewing the video surveillance from that morning, Swanner and Holt concluded that Turner instructed the staff not to work until Aurora contacted someone to fill in for a CNA who had called to report that she could not work her shift.

There is no dispute that the CBA between the Union and Aurora evokes the principle of "work now, grieve later," and in particular states as follows:

> It is understood that there shall be no strike, sitdown, slowdown, work stoppage or limitation upon production during the term of this Agreement, nor shall any officer, representative or official of the Union authorize, assist or encourage any strike, sitdown, slow down, or work stoppage during the life of this Agreement. The Employer reserves the right to discharge or discipline any associate or associates who violate the provisions of this article . . . .

Turner testified that Holt, who had been the Administrator at Aurora for less than one month, "just didn't have a good understanding of what happened." Further, Turner claimed that "I don't think [Holt] really knew the ropes of a lock – I mean, knew the definition of a lockdown/shutout. She didn't know the definition. I don't think Tina and them did."

"Management does not have to make proper decisions, only non-discriminatory ones." Bryant v. Compass Group USA, Inc., 413 F.3d 471, 478 (5th Cir. 2005) (citing Little, 924 F.2d at 97 ("even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for termination). Indeed, employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers." Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988). Even if Aurora incorrectly determined that Turner encouraged a lockdown/shutout or work stoppage, that does not show that Aurora discriminated against her, especially after a reasonable investigation revealed that eight co-employees asserted that she did. Cobb v. Singing River Health Sys., 503 F. App'x 290, 293 (5th Cir. 2012); Evans v. City of

7

Houston, 246 F.3d 344, 355 (5th Cir. 2001) ("The issue is whether the City's perception of Evans's performance, accurate or not, was the real reason for her termination").[3]

Plaintiff has not demonstrated that Defendant's reason for terminating Plaintiff for causing a work stoppage was pretextual. Plaintiff was aware of the policies of Aurora and the CBA, understood the policies, and knew they applied to her. Therefore, Plaintiff's race discrimination claim on the basis of her termination under Section 1981 is dismissed.

Although not pled as a separate claim, Plaintiff also seems to argue that she was subject to a hostile work environment because of her race. "A prima facie case of racial harassment alleging hostile work environment normally consists of five elements: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). Courts must look to the "totality of circumstances" to determine whether a work environment is hostile and "focus[] on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct

---

[3] Turner attached as an exhibit to her Response the surveillance footage from the security cameras at Aurora on October 7. She contends the video evidence shows that she did not encourage others to stop working and that work commenced. The record reflects that administrators at Aurora reviewed that evidence as well prior to Turner's termination and as part of their investigation. The Court therefore, does not attempt to second guess those business determinations. Shackelford v. Deloitte & Touche, LLP, 190 F.3d 298, 408-09 (5th Cir. 1999). The video evidence was reviewed, however, but the Court was unable to determine who was portrayed in the surveillance, what their function was at the skilled nursing facility, or what their duties would normally have been at the time.

unreasonably interferes with an employee's work performance." Mota v. Univ. of Texas Houston Health Sci. Ctr., 261 F.3d 512, 523-24 (5th Cir. 2001) (quoting Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996)). Harassment will be seen as "affect[ing] a term, condition, or privilege of employment," when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quoting Harris, 510 U.S. at 21, 114 S. Ct. 367).

Plaintiff attempts to rope in the claims her daughter, Danielle Dean, who also filed in a lawsuit against Aurora for racial harassment. The statute of limitations applied to Section 1981, however, pose a problem in this situation. Because Section 1981 does not contain its own statute of limitations, the Supreme Court has determined that certain claims brought pursuant to Section 1981 are subject to the federal four year catch-all statute of limitations set forth in 28 U.S.C. § 1658. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004). As Plaintiff's complaint was filed on January 3, 2013, all allegations occurring prior to January 3, 2009, are outside the statute of limitations and therefore, not actionable here. It is undisputed that Danielle Dean was allegedly harassed while employed at Aurora and that she was terminated in October of 2007. Therefore, none of the alleged harassment that Plaintiff endured while her daughter was employed with Aurora remain actionable in this suit.

Plaintiff claims that during her employment with Aurora, there was a "racially charged and motivated atmosphere." Such harassment allegedly included Tina Swanner, the Director of Nursing, using such phrases as "ghetto booty," "hood rich," and "you people" when describing or talking to African American CNAs. Turner also claims that Swanner made an inappropriate racial stereotyping comment about African Americans enjoying fried chicken and told Turner that she had "a white girl booty." Plaintiff claims that in her capacity as union steward, she filed

9

five race-related grievances against Swanner in 2011. Turner could not specifically recall the content of all five and did not offer any grievances into the record. Aside from the comments above, Turner overall alleges that Swanner disagreed with the presence of the union in the workplace. Turner assumed it was because the representatives, President, and union board were all African American. She also alludes to an incident regarding Holt borrowing a book and refusing to return it, an incident in which a resident's injury was blamed on Turner instead of Swanner, and an incident in which Swanner attempted to get Turner to change a written statement regarding a patient getting fondled. Plaintiff fails to include why or how those incidents implicate her race.

Plaintiff's hostile work environment claim cannot withstand summary judgment because there is insufficient evidence that the alleged harassment affected a term or condition of Plaintiff's employment. There is an absence of evidence that Defendant's conduct rose to the level of physical threats or humiliation, and Plaintiff admits the allegedly hostile work environment did not interfere with Plaintiff's work performance. Harris, 510 U.S. at 21, 114 S. Ct. 367 (actionable harassment "will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers"). Plaintiff specifically testified as follows:

> Q: When you worked at Aurora, did you ever have any problems with the quality of your work?
>
> A: No.
>
> Q: And were you always able to perform your job duties and do adequate work?
>
> A: To the best of my ability, I did.
>
> Q: Did anything ever happen that affected your ability to take care of the residents or to do your job?

| | | |
|---|---|---|
| A: | | What do you mean by that? |
| Q: | | Is there anything that anybody did or said to you when you worked at Aurora that made it hard for you to do your job? |
| A: | | Not to my knowledge, it - - not to my knowledge, it didn't. |
| Q: | | Did any of the things that Tina Swanner did that we've talked about ever interfere with your ability to do quality work? |
| A: | | Far as her saying something to me? |
| Q: | | Right. |
| A: | | Not - - her words meant nothing. Her actions did everything because she took away some of our - - some of the things, tools and things we were supposed to work with. Her word - - Tina words meant nothing to me at all. |
| Q: | | Did any of the things that Tina - - actions or words that Tina said to you that you thought were racist or based on your race, did that ever make it impossible for you to do your job? |
| A: | | No . . . . |
| | * * * | |
| Q: | | And same thing for Aileen Holt; did she ever do or say anything to you that made it difficult for you to do your job? |
| A: | | No. |

Under these facts, the Court is of the view Plaintiff cannot demonstrate that the harassment of which she complains affected a term or condition of her employment, or that her belief that the alleged harassment was severe and pervasive enough to constitute an abusive work environment is objectively reasonable. See, e.g., Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 326, 122 F. App'x 734 (5th Cir. 2004) ("[T]he harassment must be so severe and pervasive that it destroys a [plaintiff's] opportunity to succeed in the work place.") (citation

omitted). Indeed, the allegations are ambiguous and generalized such that no genuine dispute of material fact as to whether the harassment was severe and pervasive. See Barkley v. Singing River Elec. Power Ass'n, 433 F. App'x 254, 258 (5th Cir. 2011). Plaintiff thus cannot establish a prima facie case of hostile work environment. See Mendoza v. Helicopter, 548 F. App'x 127, 2013 U.S. App. LEXIS 23985, 2013 WL 6225181, at *2 (5th Cir. Dec. 2, 2013).

*Retaliation under Section 1981 and Title VII*

Title VII retaliation claims based on circumstantial evidence proceed under the familiar McDonnell Douglas burden-shifting framework. McCoy, 492 F.3d at 556 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Claims under 42 U.S.C. § 1981 follow the same method of analysis. Jones v. Robinson Property Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005). The plaintiff must first establish a prima facie case by showing: "(1) [she] participated in an activity protected by Title VII; (2) [the] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the materially adverse action." Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008) (citing McCoy, 492 F.3d at 557). Upon establishing a prima facie case, the burden shifts to the employer to produce a legitimate, non-retaliatory reason for the employment action. Id. "If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason." Id. (citing McCoy, 492 F.3d at 557)); see also Nassar, 133 S. Ct. at 2533, 186 L. Ed. 2d 503 ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . [t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

Protected activity implicates conduct "made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). "Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." Brown v. United Parcel Serv., Inc., 406 F. App'x 837, 840 (5th Cir. 2010) (citations omitted). "Title VII protects opposition only when the plaintiff opposed conduct Title VII prohibits. As often stated, Title VII 'does not set forth a general civility code for the American workplace.'" Wynn v. Miss. Dep't of Human Servs., 2011 U.S. Dist. LEXIS 86458, 2011 WL 3423142, at *6 (S.D. Miss. Aug. 4, 2011) (citing Burlington N. Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)) (some quotations omitted). It follows that the Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 493 (5th Cir. 2011) (collecting cases and holding that complaints of "hostile work environment" did not constitute protected activity); see also Brown, 406 F. App'x at 840 (holding that undefined claim of "discrimination" was not protected activity).

Plaintiff claims she was retaliated against by being moved from being the ward clerk back to the floor, even though both positions were classified as CNA positions, there was no pay differential, and she had more duties as a ward clerk. She also claims she was retaliated against by having several accusations against her made by Aurora which were later debunked. Plaintiff fails to tie these incidents with any complaints, opposition, or other protected activity under Title VII, therefore, the Court finds as to these claims no prima facie case of retaliation has been shown.

Turner additionally claims that she was terminated for filing grievances on behalf of herself and others concerning the racially charged atmosphere. As noted above, Plaintiff failed to include those complaints made to the union in the record. When questioned about those grievances, Plaintiff noted that two were filed in her capacity as a union steward, and one she filed for herself. In particular, she asserts that one was for Swanner's comment that another CNA's medical issues were due to her "ghetto booty." The second grievance was filed for mentioning that another CNA was "hood rich" based on her wearing an expensive pair of shoes.

Turner contends that a third grievance, filed on her own behalf, was filed based on a comment Swanner made about the union. When asked whether she considered those comments to be race-based, Turner answered yes, "[b]ecause, first of all, if you run a union-ran plant environment, you don't come in talking about the union, and all the representatives in the union are black. If you come into a facility and you know the facility is union ran, you keep your comments to yourself." A meeting was held "for [Swanner] to know what the union role was in there and what our respect to her - - to the company was and how they had to respect us." The other grievance Turner filed on her own behalf against Swanner concerned a fondling incident between two residents for which Turner had witnessed and written a statement about. Swanner requested that Turner amend her statement, Turner refused, and instead called the Attorney General's Office to report the conduct.

Based on the record, the Court has not be presented evidence that Turner's grievance regarding Swanner's comments about the union and the fondling incident were protected activities. While Turner claims the union comment was obviously race-related because all union representatives were African American, there is no indication in the record that the proceedings resulting from the grievance were focused on race relations, race discrimination, or any other

14

protected activity under Title VII. Likewise with the fondling incident grievance, there is no indication that Turner's complaints were for race-based treatment. As those were the only two grievances filed on her own behalf, the Plaintiff has failed to assert a prima facie case of retaliation.

As to the remaining grievances, the Court also finds Plaintiff has failed to satisfy the causal connection necessary to establish a prima facie case of retaliation. To the extent that Turner relies on temporal proximity to establish the necessary causal connection at the prima facie stage, such allegations require a "very close" connection between events to survive summary judgment. Strong v. Univ. Healthcare Sys., LLC, 482 F.3d 802, 808 (5th Cir. 2007) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)). While Turner alleges that these grievances were all filed in one week in 2011, prior to her October 2011 termination, she was unable to pinpoint the date more narrowly. Without a more definitive time range, the Court is unable to rely on temporal proximity alone to establish the necessary causal connection with her termination. See Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471-72 (5th Cir. 2002) (holding that five-month time lapse precluded inference of causal link from temporal proximity). Further, there is no evidence that Aurora had knowledge of any of the grievances filed to the Union on Turner's co-workers behalf. Ramirez v. Gonzales, 225 F. App'x 203, 210 (5th Cir. 2007) ("Fifth Circuit precedent requires evidence of knowledge of the protected activity on the part of the decision maker and temporal proximity between the protected activity and the adverse employment action."). In fact, Swanner's affidavit explicitly stated that she was not aware of complaints to the union accusing her of racially harassing subordinates. See Thompson v. Somervell County, 431 F. App'x 338, 342 (5th Cir. 2011) (citing Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("temporal

proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.")). Indeed, Turner acknowledges that by the time Aileen Holt became the interim Administrator at Aurora, the issue of "work short-staffed" took precedent over Turner's race complaints.

Accordingly, Turner has failed to sustain her burden for summary judgment as her claim of retaliationTur. All claims are therefore dismissed.

*Conclusion*

Defendant's Motion for Summary Judgment [61] is GRANTED, Plaintiff's claims are DISMISSED, and this case is CLOSED.

SO ORDERED, this the 12th day of September, 2014.

                                                 **/s/ Sharion Aycock**
                                                 **U.S. DISTRICT JUDGE**